UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

| | |
|---|---|
| LIONS GATE ENTERTAINMENT CORP., : | |
| : | |
| Plaintiff, : | Civ. Action No. 10 CV 8169 |
| : | |
| v. : | |
| : | |
| CARL C. ICAHN, BRETT ICAHN, ICAHN PARTNERS : | |
| LP, HIGH RIVER LIMITED PARTNERSHIP, HOPPER : | |
| INVESTMENTS LLC, BARBERRY CORP., ICAHN : | |
| ONSHORE LP, ICAHN OFFSHORE LP, ICAHN CAPITAL : | |
| LP, IPH GP LLC, ICAHN ENTERPRISES HOLDINGS : | |
| L.P., ICAHN ENTERPRISES G.P. INC., and BECKTON : | |
| CORP., : | |
| : | |
| Defendants. : | |

------------------------------------------------------------------------ X

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**APPLICATION FOR EXPEDITED SCHEDULING AND DISCOVERY**

# TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES ................................................................................iii

INTRODUCTION ..........................................................................................1

FACTUAL BACKGROUND ...............................................................................3

    A.    Icahn's Investments In Lions Gate and MGM................................3

    B.    The March 2010 Tender Offer ......................................................4

    C.    Lions Gate's Board And Management's Failed Poison Pills...........4

    D.    The Standstill Agreement and the July 20 Transaction ..................5

    E.    The July 2010 Tender Offer..........................................................6

    F.    Icahn's Lawsuits Challenging The July 20 Transaction .................6

    G.    The Parties' Recent Efforts to Merge Lions Gate And MGM.........7

ARGUMENT ................................................................................................8

There Is No "Good Cause" For Expedited Discovery .........................................9

    A.    Lions Gate's Non-Disclosure Allegations Are Flatly
        Contradicted By Actual Public Filings ...........................................8

    B.    Icahn Has No Obligation To Disclose The Names
        Of His Proposed Nominees Prior To A Proxy Solicitation .............10

    C.    If Brett Icahn's Identity As A Potential Director Was
        "Unquestionably Material To Lions Gate Shareholders."
        Lions Gate Breach Its Own Disclosure Obligations .......................11

    D.    Icahn Is Not Required To Disclose Inchoate Plans .......................11

    E.    There Were No "Side Deals" Regarding Mark Cuban's
        Shares, and Lions Gate's Anonymous Sources Are
        Insufficient to Warrant Further Inquiry .........................................13

F.    Icahn's Filing Of Plaintiff's Complaint Moots Plaintiff's
Injunctive Relief Regarding Disclosure And Expedited Discovery ................15

G.    Lions Gate's Delays Preclude It From Seeking Expedited Discovery ............16

H.    The Discovery Lions Gate Seeks Is Not "Narrowly Tailored"
To The Facts At Issue ......................................................................................17

CONCLUSION.........................................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Avnet, Inc. v. Scope Ind.*,
   499 F. Supp. 1121 (S.D.N.Y. 1980)................................................................15

*Ayyash v.Bank Al-Madina*,
   233 F.R.D. 325 (S.D.N.Y. 2005) ...................................................................8

*Azurite Corp. Ltd. v. Amster & Co.*,
   52 F.3d 15 (2d Cir. 1995) ...........................................................................11

*Burghart v. Landau*,
   1989 WL 97904 (S.D.N.Y. Aug. 11, 1989)...................................................12

*Citibank, N.A. v. Citytrust*,
   756 F.2d 273 (2d Cir. 1985)........................................................................16

*Don King Productions, Inc. v. Hopkins*,
   2004 WL 2997800 (S.D.N.Y. Dec. 23, 2004) ...............................................8

*Int'l Banknote Co., Inc. v. Mueller*,
   713 F. Supp. 612 (S.D.N.Y. 1989)...............................................................10

*Mo. Portland Cement Co. v. Cargill, Inc.*,
   498 F.2d 851 (2d Cir. 1974).......................................................................10

*MTD Serv. Corp. v. Weldotron Corp.*,
   1994 WL 455154 (S.D.N.Y. Aug. 19, 1994).................................................10

*NACCO Indus., Inc. v. Applica Inc.*,
   2006 WL 3762090 (N.D. Ohio 2006)......................................................16, 17

*Notaro v. Koch*,
   95 F.R.D. 403 (S.D.N.Y. 1982) ...................................................................8

*Russell v. Lumpkin*,
   2010 WL 1882139 (S.D. Ohio May 11, 2010) (App. Mem. at 4) ...........................17

*Stern v. Cosby*,
   246 F.R.D. 453 (2007) (App. Mem. at 4) ..............................................8

*Susquehanna Corp. v. Pan Am. Sulpher Co.*,
   423 F.2d 1075 (5th Cir. 1970) ...................................................................12

*Taro Pharm. Ind. Ltd. v. Sun Pharm. Ind. Ltd.*,
    2010 WL 2835548 (S.D.N.Y. July 13, 2010) ........................................................................15

*Vladimir v. Bioenvision Inc.*,
    606 F. Supp. 2d 473 (S.D.N.Y. 2009) ........................................................................14

**OTHER AUTHORITIES**

17 C.F.R. § 229.1006(c)(4) ........................................................................10

17 C.F.R. § 229.1011 ........................................................................11

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S**
**APPLICATION FOR EXPEDITED SCHEDULING AND DISCOVERY**

Defendants Carl C. Icahn, Brett Icahn, Icahn Partners LP, High River Limited Partnership, Hopper Investments LLC, Barberry Corp., Icahn Onshore LP, Icahn Offshore LP, Icahn Capital LP, IPH GP LLC, Icahn Enterprises Holdings L.P., Icahn Enterprises G.P. Inc., and Beckton Corp., (collectively, "Icahn" or "Defendants"), through their attorneys, hereby respond to Plaintiff Lions Gate Entertainment Corp.'s ("Plaintiff" or "Lions Gate") Application for Expedited Scheduling and Discovery ("Application" or "App.") and supporting Memorandum of Law ("App. Mem.") as follows:

## INTRODUCTION

This action is the sixth legal battle this year in an ongoing struggle between activist investor Carl Icahn and Lions Gate executives desperate to save their jobs at any cost. Icahn is Lions Gate's largest shareholder, and has been attempting since February 2010 to hold Lions Gate's board and management accountable for the company's dismal performance and bloated overhead by replacing them with his own slate. Icahn has at all times acted lawfully and in good faith in that process, building up his shareholdings through open market purchases and a series of public tender offers. In response, Lions Gate's management has given new meaning to the word "entrenched" by digging themselves in and engaging in a successive volley of poison pills, dilutive stock issuances, and legal proceedings aimed at warding off the accountability Icahn seeks to impose.

This action—which attempts to seek injunctive relief for alleged disclosure violations that occurred and were fully known to Lions Gate between four and eight months ago—is in fact a decoy, brought in order to divert Icahn's resources from an ongoing lawsuit before Judge

1

James A. Yates in New York State Supreme Court.   That case is in the middle of discovery in advance of a preliminary injunction motion by Icahn seeking to unwind Lions Gate's previous defensive maneuver, a midnight issuance of over 16 million new shares to a management-friendly director despite management's written promise to Icahn that no such issuance would take place.   If Icahn succeeds in that motion, he will have a strong chance of winning control of the company at the next annual shareholders meeting and ousting the incumbent management.

The allegations here are befitting of the desperate circumstances from which they arise. Lions Gate has alleged that Icahn failed to disclose, in tender offer documents filed many months ago, that (1) Icahn owned debt in rival movie studio MGM, (2) Icahn might support a merger between Lions Gate and MGM, and (3) Icahn was considering nominating his son Brett to serve as his representative on Lions Gate's board.   Lions Gate further alleges that Icahn violated the Best Price Rule by paying Mark Cuban some unidentified "special consideration" over and above what Icahn paid to other offerees.   As set forth below, these allegations are false and flatly contradicted by actual public filings.   In these circumstances, Lions Gate can show neither good faith nor the "good cause" required to justify expedited discovery, and its Application should be denied.

As more fully set forth herein, "good cause" does not exist because, *inter alia*:

(a)  Icahn *did* disclose what Lions Gate claims he did not;

(b)  Icahn was not required to disclose the names of his director nominees prior to any proxy solicitation;

(c)  Lions Gate knew the same allegedly material facts Icahn did and also failed to disclose them;

(d)  Icahn was not required to disclose inchoate plans;

(e)  Mark Cuban received exactly the same consideration for his shares that everyone else did;

2

     (f)  Icahn has mooted Lions Gate's non-disclosure claims by filing a copy of the complaint in this action with the SEC;

     (g)  Lions Gate's substantial delays in challenging the disclosures at issue here bar the relief sought;

     (h)  The discovery sought is not "narrowly tailored" to the facts at issue; and

     (i)  The claims asserted are insufficient as a matter of law.[1]

For these reasons, Lions Gate's application for expedited discovery should be denied.

## **FACTUAL BACKGROUND**

A.     <u>Icahn's Investments In Lions Gate and MGM</u>

Carl C. Icahn (and various entities Mr. Icahn indirectly controls (collectively, "Icahn")) is an activist investor. His investment strategy is to acquire significant interests in underperforming companies, gain board representation, and then use his board representation to hold members of management accountable for poor financial performance by replacing them with more competent managers.

Icahn has been attempting to carry out that investment strategy at both Lions Gate and MGM. Icahn began acquiring common stock of Lions Gate in 2006. Since that time, through gradual open market purchases and two separate tender offers, Icahn has become Lions Gate's largest shareholder. Over that period, Lions Gate's stock has significantly underperformed, with its price declining more than 43%. According to Lions Gate' own Annual Report on Form 10-K dated June 1, 2010, an investment of $100 in Lion's Gate stock on March 31, 2005, would have been worth only $56.47 on March 31, 2010, while a $100 investment in the NYSE Composite Index over that same period would have grown to $117.20 (assuming that all dividends were reinvested). As a result of this poor performance, Icahn has, since February of this year, been

---

[1] Among the other reasons discussed herein, Lions Gate lacks standing to assert many of its claims under the recent Supreme Court case law limiting when private rights of action may be implied. Icahn will brief this issue on its motion to dismiss.

attempting to gain a controlling stake in the company in order to replace Lions Gate's management with managers who will optimize the company's value.  (*See* Lynn Decl., ¶ 21, Ex. LL).

Icahn has also been an investor in MGM since November 2008.  MGM, once a legendary film studio, has been hobbled by a crushing debt burden since before Icahn's investment.  Icahn bought participation interests in MGM's debt in the face amount of $145 million in November and December 2008, and an additional face amount of $51 million in July and November 2009, all at substantial discounts to face value.

Icahn did not buy or otherwise trade in MGM debt in any way between November 2009 and August 2010, including for the entire duration of his March 2010 Tender Offer for Lions Gate common stock discussed below.


B.     The March 2010 Tender Offer

From March 1, 2010 to June 30, 2010, Icahn made, and repeatedly amended, a tender offer for Lions Gate's common stock.  In response to that offer, Icahn received shares boosting his holdings from approximately 18.6% to 33.9% of the company.  Thereafter, Icahn purchased additional shares on the open market bringing the total to 37.9%.


C.     Lions Gate's Board and Management's Failed Poison Pills

The current members of Lions Gate's Board and management have opposed Icahn's attempt to increase its holdings and to obtain Board representation.  In order to avoid accountability and preserve their substantial fees, stock awards and stock options, on March 11, 2010, the Board adopted a poison pill designed to prevent a change in control, which was described and warned of by Icahn in the March 1, 2010 tender offer filing.  (Ex.C, 3/1/10

4

Circular at 39).  On April 27, 2010, the British Columbia Securities Commission[2] ("BCSC") issued an order cease trading the poison pill as contrary to the public interest.  The British Columbia Court of Appeal upheld Lions Gate's appeal of the order.  Undeterred, on July 1, 2010, the Lions Gate Board approved another poison pill, which the BCSC also cease traded on October 18, 2010.

 

     D.     <u>The Standstill Agreement and the July 20 Transaction</u>

In spite of Lions Gate's continued efforts to evade accountability for the company's poor performance, Lions Gate approached Icahn in early July 2010 and asked him to agree to a truce during which Lions Gate and Icahn would work together on a potential merger transaction with MGM.  On July 9, 2010, Icahn and Lions Gate entered into a written Standstill Agreement which provided that, for the following 10 days (the "Standstill Period"), Lions Gate would not (i) agree to issue any securities to its directors, (ii) negotiate any transaction involving the issuance of securities in excess of 5% of the company, (iii) arrange for or encourage any other person or entity to purchase Lions Gate securities, or (iv) agree to issue any securities outside of the regular course of business.   (Ex. A, 7/9/10 Standstill Agreement).  The primary purpose of this Standstill Agreement was to prevent Lions Gate from taking steps to dilute Icahn's position—as Lions Gate had repeatedly threatened to do – while the parties worked together to pursue merger opportunities.

In a blatant and willful breach of this Standstill Agreement, Lions Gate spent the entire Standstill Period negotiating, planning, and agreeing to a three-stage transaction (the "July 20

---

[2]     Lions Gate is a corporation organized under the laws of British Columbia, Canada, with its principal places of business in British Columbia, Canada and Los Angeles, California.  Its common stock is listed and traded on the New York Stock Exchange.

Transaction") that resulted in the issuance of more than 16 million shares to Mark Rachesky, a member of the Board and supporter of Lions Gate's management.

The July 20 Transaction had the combined effect of increasing Rachesky's holdings in Lions Gate from under 20% to approximately 29%, while at the same time reducing Icahn's holdings from 37.9% to approximately 33.5%. Icahn's chances of winning a proxy fight at the next annual shareholders meeting were wiped out as a result of this change in relative control.

E.      The July 2010 Tender Offer

Also on July 20, 2010, but prior to learning of the July 20 Transaction, Icahn commenced another tender offer to purchase shares of Lions Gate. In this offer, Icahn again made clear his intention to "seek to replace all or the lion's share of the Lions Gate's board of directors with the Icahn Group's nominees." (Ex. D, 7/20/10 Circular at 50). In the tender offer filings, Icahn explained that the Board and management's second attempt at a poison pill was evidence that it was extremely unlikely that they would allow the shareholders to make their own determinations regarding Lions Gate, including future acquisitions. *Id*.

F.      Icahn's Lawsuits Challenging the July 20 Transaction

On July 23, 2010, Icahn filed a petition in the Supreme Court of British Columbia (the "BC Petition") against Lions Gate, Rachesky and others, alleging that the July 20 Transaction constituted "oppression"—a Canadian corporate remedy available to shareholders when management acts with "unfair prejudice" to shareholders' "reasonable expectations." After an expedited procedure which included the submissions of affidavits and cross examination, the court denied the remedy sought in a decision dated November 1, 2010.

On July 26, 2010, Icahn also filed suit against Lions Gate, its Board, and others in the Supreme Court of the State of New York, alleging that the July 20 Transaction constituted a breach of the Standstill Agreement, tortious interference with the Standstill Agreement, and tortious interference with prospective business relationships.  Over Lions Gate's objection, Judge Yates directed that discovery be taken regarding whether Lions Gate breached the Standstill Agreement, in advance of a preliminary injunction motion by Icahn seeking to restrain Rachesky from voting the shares he obtained in the July 20 Transaction at Lions Gate's next annual shareholders meeting.

As of this writing, the parties to the New York State Court action have substantially completed document discovery and are in the midst of eight depositions in advance of a status conference scheduled for November 9, 2010.  Briefing on Icahn's preliminary injunction motion is expected to occupy the remainder of November, with a decision expected prior to December 15, 2010 (the last date Lions Gate may hold its annual shareholders meeting absent an order of a Canadian court or regulator).

G.    The Parties' Recent Efforts To Merge Lions Gate and MGM

Notwithstanding the above hostilities, Lions Gate and Icahn continued to work together to explore a potential Lions Gate–MGM merger after the filing of the BC Petition and the New York State Court action.  At Lions Gate's request, Icahn publicly announced that he supported a new merger plan put forward by Lions Gate (the "Lions Gate Plan"), and that he would continue to do so regardless of the outcome of the New York State Court action.

But the Lions Gate Plan was not the first choice of the MGM debt holders,  whose vote for a pre-package bankruptcy plan was required for its approval.  Those debt holders instead favored a rival plan to turn over the post-bankruptcy company to the executives of Spyglass

Entertainment (the "Spyglass Plan"). In order to influence the MGM debt holder vote, Icahn began buying additional MGM debt. Between August and October 2010, Icahn bought an additional $405 million face value of debt, again at substantial discounts to face value, to bring his total holdings to approximately $600 million face value, or 15% of the total MGM debt outstanding. All of these purchases were done with the knowledge and encouragement of Lions Gate. Despite these efforts, on October 28, 2010, the MGM creditors voted to accept the Spyglass Plan.


## ARGUMENT

## There Is No "Good Cause" For Expedited Discovery

Lions Gate has failed to show the "good cause" element necessary for this Court to allow expedited discovery.[3] "Good cause" does not exist here for multitude of reasons.

---

[3] The "good cause" and "reasonableness" standards evolved from more stringent standards for expedited discovery articulated in *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982). While many courts have adopted the "good cause" standard, there is still a focus on the urgency to the discovery, similar to the irreparable harm standard in *Notaro*. *See e.g., Ayyash v.Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005). *But see Don King Productions, Inc. v. Hopkins*, 2004 WL 2997800, at *2 (S.D.N.Y. Dec. 23, 2004) (applying the four-factor *Notaro* test while denying expedited discovery for failure to identify an irreparable injury).

Plaintiff's cited cases do not support finding good cause under these circumstances. In *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (2005) (App. Mem. at 4), the court allowed expedited discovery because "of the fact that defendants are foreign individuals and corporations who have both incentive and capacity to hide their assets, [so] there is considerable urgency to plaintiff's need to seek information about the location of defendants' possible assets within the United States." Those extreme circumstances are fundamentally distinguishable from those at issue here, and highlight the court's concern with the urgency of obtaining the discovery. Plaintiff has demonstrated no such urgency here.

In *Stern v. Cosby*, 246 F.R.D. 453 (2007) (App. Mem. at 4), the court allowed limited discovery on the specific issue of whether the defendant attempted to interfere with potential witnesses, which, if true, would have "endangered the integrity of the judicial process." As discussed in more detail below, Plaintiff's overbroad requests militate against a finding of good cause, and the judicial process is in no danger by Icahn.

A.      Lions Gate's Non-Disclosure Allegations Are Flatly Contradicted By Actual
        Public Filings

Lions Gate cannot show the "good cause" required to obtain expedited discovery because

its allegations are flatly contradicted by actual public filings.  Contrary to Plaintiff's allegations,

Icahn *did* disclose that he (1) owned MGM debt, (2) would consider supporting a Lions Gate-

MGM merger on the right terms, and (3) was considering nominating his son Brett to be his

representative on Lions Gate's board.

Icahn disclosed in his March 1, 2010 Tender Offer filings that, during discussions with

Lions Gate's Michael Burns in May and June 2009, Carl and Brett Icahn told Mr. Burns that they

might be interested in a Lions Gate-MGM merger "if (i) Lions Gate were to be able to acquire

MGM Studios at an attractive enough valuation and (ii) any such acquisition were to be financed

without Lions Gate incurring an excessive amount of indebtedness."  Form SC TO-T at 39

(March 1, 2010); Form SC TO-T at 45 (July 20, 2010).  Icahn's disclosure went on to state that

the Icahns and Burns "discussed various related matters, including the distressed situation of

MGM Studios, the fact that the Icahns owned debt of MGM Studios (which they had been

acquiring in early November of 2008), the possibility of the Icahns providing Lions Gate with a

financing commitment, and possible confidentiality agreements that Lions Gate might require,

but no understandings were reached."  Form SC TO-T at 39 (March 1, 2010) (Lynn Decl. ¶ 8,

Ex. C); Form SC TO-T at 45 (July 20, 2010) (Lynn Decl. ¶ 8, Ex. D).

On March 24, 2010, Icahn disclosed that regulatory clearance from Canada in connection

with the First Offer "brings us closer to our goal of replacing Lions Gate's board of directors and

changing the strategic direction of the company."  Form SC TO-T/A (also designated Form 13

D/A), Ex. (a)(5)(iv) (March 24, 2010) (Lynn Decl., ¶ 44, Ex. BB).  Icahn listed Brett Icahn as a

Participant, and his biography was included, in the initial Schedule 14A Proxy Statement filed on

March 19, 2010, relating to Icahn's proxy solicitation for the upcoming Lions Gate annual shareholders meeting.

        B.      <u>Icahn Has No Obligation To Disclose The Names Of His Proposed Nominees Prior To A Proxy Solicitation</u>

There is no obligation to disclose on a Schedule 13D the *exact name* of the person who will be appointed to the Board. *See MTD Serv. Corp. v. Weldotron Corp*., 1994 WL 455154, *6 (S.D.N.Y. Aug. 19, 1994) (finding that reporting person did not have to disclose the exact name of the person who would serve on the board of directors and noting that plaintiff corporation cited "no authority for the proposition that the name of the designee must be disclosed").  In fact, a person only has to disclose that he/she intends to seek a change in the composition of the board of directors, which unquestionably happened here.  *See Int'l Banknote Co., Inc. v. Mueller*, 713 F. Supp. 612, 621 (S.D.N.Y. 1989) (finding that disclosure that "members of the Shareholders' Committee intend to seek a change in the composition of the Board of Directors of the Company . . . by proposing a slate of directors in opposition to management's slate and by taking such other steps . . . ." was sufficient disclosure under 13(d)).[4]  Like the plaintiff in *MTD Service Corp*., Lions Gate has cited no case supporting its argument.  It merely cites the general language of the regulations, which requires disclosure of plans to change the present board or management, and which is exactly what the Icahn Group disclosed.

---

[4]       These arguments also apply to tender offers under 14(d) and 14(e).  *Compare* 17 C.F.R. § 240.13d-101 (Item 4(d)) (Schedule 13D) *with* 17 C.F.R. § 229.1006(c)(4) (tender offers); *see also Mo. Portland Cement Co. v. Cargill, Inc.*, 498 F.2d 851, 872 (2d Cir. 1974) ("The regulations under § 14(d) require a tender offer to state or summarize the information required by Schedule 13D.").

C.      If Brett Icahn's Identity As A Potential Director Was "Unquestionably Material To Lions Gate Shareholders," Lions Gate Breached Its Own Disclosure Obligations

Lions Gate alleges that during his contest for control of Lions Gate, Icahn "made clear to the company his intent to confer upon his son Brett substantial authority over Lion's Gate's business and affairs.  Icahn has repeatedly signaled his desire and intent to bestow Brett with significant decision-making authority over major creative and financial decisions at Lions Gate."  (App. Mem. at 3; *see also* Compl. ¶¶ 38, 84).  Lions Gate further alleges that if Brett Icahn is being considered for a position on the board or within management, this information would be "unquestionably material to Lions Gate shareholders" and so any failure by Icahn to have disclosed such plans would be a "violation of law."  (App. Mem. at 3, 7).

However, Item 8 of Schedule 14D-9 calls for the information required by Item 1011(b) of Regulation M-A, which requires the subject company [Lions Gate] to "furnish such additional material information, if any, as may be necessary to make the required statements, in the light of the circumstances in which they were made, not materially misleading."  17 C.F.R. § 229.1011.  Consequently, Lions Gate was not only free to disclose whatever it chose to concerning Brett Icahn, including its own views concerning his qualifications (or lack thereof), it was obligated to bring any information it deemed material to the attention of its shareholders during the tender offer --  not seek rescission months after the tender closed.[5]

D.      Icahn Is Not Required To Disclose Inchoate Plans

"[T]here is no requirement to make predictions . . . or to disclose tentative plans [ ] or inchoate plans."  *Azurite Corp. Ltd. v. Amster & Co.*, 52 F.3d 15, 18 (2d Cir. 1995).  "[I]nquiries,

---

[5]      In addition, at any point along the way, Lions Gate could have applied to the New York or British Columbia courts for an order compelling Icahn to provide the disclosure that Lions Gate only now claims is missing.

preliminary discussions or communications preparatory to a possible acquisition of one company by another do not require disclosure . . . ." *Burghart v. Landau*, 1989 WL 97904, *6 (S.D.N.Y. Aug. 11, 1989).  Indeed, "public disclosure of tentative, indefinite, and contingent facts would itself be misleading." *Id.*

Thus, while an offeror "has an obligation fairly to disclose its plans in the event of a takeover, it is not required to make predictions of future behavior, however tentatively phrased, which may cause the offeree or the public investor to rely on them unjustifiably.  Target companies must not be provided the opportunity to use the future plans provision as a tool for dilatory litigation." *See Susquehanna Corp. v. Pan Am. Sulpher Co.*, 423 F.2d 1075, 1085-86 (5th Cir. 1970) (internal citation omitted).

As set forth in the accompanying Affidavit of Jesse Lynn (and contrary to Lions Gate's allegations), Icahn's plans with respect to MGM were consistent throughout the period at issue. Icahn was not opposed to an MGM deal on any terms; rather, he feared Lions Gate would proceed with an acquisition on unreasonable terms and burden the company with substantial additional debt, as it had done in prior acquisitions, and for that reason, Icahn continued to assert that major acquisitions should be subject to shareholder approval.   (Lynn Aff., ¶¶ 17-20). Icahn's position in this regard was consistent, calling for:

- "a greater opportunity to participate in decisions regarding major acquisitions and other matters that will affect all Shareholders" (Ex. C, Form SC TO-T at 5, 42 (March 1, 2010));

- "[i]t should be up to the shareholders to determine if they wish to more than 'double down' on another library, especially in light of the company's admitted

'substantial degree of leverage'" (Ex. K, Notice of Variation and Extension dated March 19, 2010 at 10, 15);

- "Due to management's recent actions, I am now convinced that Lions Gate shareholders will never have the right to make important decisions. . . . I believe that Lions Gate's management should not further leverage up the company to purchase a film library without allowing shareholders the opportunity to decide whether increasing exposure to this segment is wise" (Ex. K, Notice of Variation and Extension dated March 19, 2010 at 2, 3; *see also* Ex. L, Press Release dated March 19, 2010);

- Icahn was not opposed to a merger; he was opposed to Lions Gate "using excessive debt and risking the shareholders' equity" (Ex. M, Press release dated March 24, 2010).

Nevertheless, even if one assumes arguendo that Icahn's plans concerning MGM were inconsistent as between March 2010 and October 2010, such an inconsistency is not grounds for a misleading disclosure claim. Icahn had no obligation to state his plans more definitively than they actually were. There was no merger plan with acceptable terms on the table in March 2010, and there was in October 2010. It was hardly inconsistent or a reversal from the position repeatedly stated above for Icahn to accept what he had been asking for.

      E.       <u>There Were No "Side Deals" Regarding Mark Cuban's Shares, and Lions Gate's Anonymous Sources Are Insufficient To Warrant Further Inquiry</u>

Lions Gate accuses Icahn of violating the Best Price Rule by paying "special and undisclosed consideration" to Mark Cuban, above and beyond the price offered to all offerees. (Compl. ¶¶ 46-48, 100-101; App. Mem. at 3-4). Lions Gate pleads that its sole basis for this

allegation is hearsay gossip from "two individuals with knowledge of the arrangement" (Compl. ¶ 48).  Lions Gate neither identified these "two individuals" nor the "special consideration" they claim Mr. Cuban received.  This type of pleading does not come close to satisfying the *Twombly* standard.

Upon reading these allegations, Mr. Cuban immediately and unequivocally denied that he received any "special and undisclosed consideration" for his shares:  "There were and are no side deals with Icahn or any person or company affiliated with him."  (Ex. NN, 10/29/10 Article).[6] He added, "I wanted the liquidity" and "wanted nothing to do with the circus that was unfolding at Lions Gate."  (*Id.*).  Icahn's attorney confirmed the same on Icahn's behalf.  (Lynn Aff., ¶¶ 60-61).

Allegations such as these, which are based solely on speculation and innuendo from anonymous sources, are legally insufficient.  *See Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473, 492 (S.D.N.Y. 2009) (allegations of a 13(d) violation were insufficient because they improperly relied upon an anonymous source for the key allegation that an undefined secret agreement was formed).  In *Vladimir*, plaintiff's complaint relied upon information from a one-time officer of defendant Bioenvision, David Luci.  The court, in discrediting all of the allegations regarding the "secret agreement" stated:

> As noted above, plaintiffs have not alleged anything at all about Luci's alleged anonymous source, let alone describing him with any particularity whatsoever, and the Court is unable to determine whether this source was in a position to know what he is alleged to have told Luci, or, in fact, whether or not this alleged anonymous source even exists.

*Id.* at 492-493.

---

[6]     http://www.moneynews.com/FinanceNews/Icahn-Lions-Gate-Plotting-Merger/2010/10/29/id/375269 (last visited November 1, 2010).

F.     Icahn's Filing Of Plaintiff's Complaint Moots Plaintiff's Injunctive Relief Regarding Disclosure And Expedited Discovery

Icahn's filing with the SEC of an amended Schedule TO on October 29, 2010 cures any alleged deficiencies in Icahn's prior filings, renders Lions Gate's injunctive relief regarding disclosure moot, and supports the denial of expedited discovery.  *See Taro Pharm. Ind. Ltd. v. Sun Pharm. Ind. Ltd*., 2010 WL 2835548, *9-18 (S.D.N.Y. July 13, 2010) (denying motion for expedited discovery and citing cases denying preliminary injunctions as moot after disclosure of complaints); *Avnet, Inc. v. Scope Ind.*, 499 F. Supp. 1121, 1124-26 (S.D.N.Y. 1980); (Ex. X, 10/29/10 filing).

In *Taro*, the defendant bidder engaged in a tender offer to take control of a target, which brought an action alleging the violations of Sections 14(d) and 14(e) of the William's Act based on alleged material misrepresentations and omissions in its tender offer filings.  *See Taro*, 2010 WL 2835548 at *4.  Immediately after the complaint was filed in the Southern District, the bidder filed an amendment to its Schedule TO disclosing the existence of the litigation, and annexed a copy of the complaint.  *Id*. at *6.  Judge Gardephe held that the amendment to Schedule TO—attaching the complaint—rendered the Section 14 claims moot, denied plaintiff's motion for expedited discovery, and granted defendant-bidder's motion to dismiss.  *Id*. at *9-*10.

Similarly, in *Avnet,* Judge Lasker held that the defendant's filing of an amended 13D that attached the complaint against it was "sufficient to cure any alleged omissions in its earlier Schedule 13D and that accordingly, Avnet's [Williams Act] claim is now moot."  *Avnet, Inc*., 499 F. Supp. at 1124.  In reaching its conclusion, the *Avnet* court noted that courts only require that offerors disclose the contested issues, which allows shareholders to draw their own conclusions.  *See id*. at 1125-26.

In light of Icahn's filing of an amended Schedule TO, any alleged failures to disclose (even though vigorously contested by Icahn) are cured, Lions Gate's requested injunctive relief is moot, and expedited discovery is unwarranted.  *See* Declaration of Jesse Lynn ("Lynn Decl."), ¶ 39, Ex. X.

G.   <u>Lions Gate's Delays Preclude It From Seeking Expedited Discovery</u>

Lions Gate was aware of all of the alleged nondisclosures set forth in the complaint from public press reports appearing almost two years ago.

Icahn's holdings of MGM debt were reported widely in the press in February 2009 and March 2010.  (*See* Lynn Decl., ¶¶ 10-13, 16).  Icahn's favorable consideration of a Lions Gate-MGM merger was reported in the *New York Post* in March 2009, in *Variety* in March 2010, and by Reuters in May and July 2009. (*Id.* ¶¶ 13, 16, Exs. H, I).  The possibility of Brett Icahn playing an active role at Lions Gate and/or MGM was reported in the *L.A. Times* in March 2009 and the *Wall Street Journal* in July 2010.  (*See* Lynn Decl. ¶¶ 41, 48, Exs. AA, GG).  The tender offer filings confirm extended discussions between Icahn and Lions Gate concerning these same subjects in 2009.  (*Id.* ¶¶ 41, 48).

Lions Gate cannot claim for the first time in October 2010 that urgent injunctive relief is needed to clarify statements made in filings in March 2010, where the facts supposedly omitted have in fact been widely reported for almost two years.  *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2d Cir. 1985) (stating the "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.") (internal quotation marks and citation omitted);  *NACCO Indus., Inc. v. Applica Inc*., 2006 WL 3762090, *8, 10 (N.D. Ohio 2006) (denying TRO in a securities fraud case because plaintiff failed to show irreparable harm, and laches barred injunctive relief).

In *NACCO Industries, Inc v. Applica Inc.*, the plaintiff knew of its claims for a month before filing suit because it had filed suit in state court and then withdrew its preliminary injunction request. *Id.* at *9. The court found "Plaintiffs' own delays to be the most convincing evidence that they will not experience irreparable harm." *Id.* at *8. The court also found that laches barred the plaintiffs' injunctive relief because of plaintiffs' lack of diligence in pursuing their claims and prejudice to the defendants. *Id.* at *10. Specifically, because plaintiffs "were aware of a proposed merger well before the TRO was filed **and were involved in a related action** [but] . . . waited until the eleventh hour to file a lengthy complaint and TRO," the first prong for demonstrating laches was met. *Id.* (emphasis added).

Just as in *NACCO*, Lions Gate has been involved in numerous prior related actions against Icahn. It has known of Icahn's MGM holdings and Brett Icahn's potential role as a director since May 2009. In those actions, Lions Gate deliberately chose not to raise these disclosure claims.[7] It is now too late for Lions Gate to claim the urgency required to invoke equitable relief, having sat on its rights for months.

H.    The Discovery Lions Gate Seeks Is Not "Narrowly Tailored" To The Facts At Issue

The discovery Lions Gate seeks is neither reasonable, nor narrowly tailored, and therefore, should not be granted on an expedited basis. "[T]he scope of the requested discovery is also relevant to a good cause determination." *Russell v. Lumpkin*, 2010 WL 1882139, *2 (S.D. Ohio May 11, 2010) (App. Mem. at 4).

Among the "narrowly tailored" discovery Lions Gate seeks are, ***from October 1, 2008 to the present***:

---

[7]    In the BC Petition, Lions Gate had initially asserted non-disclosure claims, but dropped them minutes before the final hearing in what was an apparent and strategic attempt to change forum.

- "All documents concerning Lionsgate";

- "All documents concerning [Defendants'] analysis of Lionsgate's performance, finances and debt";

- "All documents concerning the valuation of … film libraries generally"; and

- "All documents concerning any purchase, sale or other transaction in any Lions Gate securities or derivatives."  (Plaintiff's Ex. A, First Set of Doc. Requests).

Reviewing documents concerning such broad subject matters for an over 2-year period would occupy Icahn's attorneys for months, which is exactly Lions Gate's intent.

To the extent expedited document discovery is permitted here, it should be limited to

1. Documents sufficient to identify Icahn's purchases of MGM debt; and

2. Documents concerning Mark Cuban's tender of shares to Icahn.

The documents responsive to these requests will conclusively establish that Lions Gate's claims have absolutely no merit and that its contemplated preliminary injunction motion should be denied.

## <u>CONCLUSION</u>

WHEREFORE, for the reasons stated above, Defendants respectfully request that Plaintiff's Application for Expedited Scheduling and Discovery be Denied, and that the Court set a briefing schedule on a motion by Icahn to dismiss the complaint.  Alternatively, if expedited discovery is granted, then Icahn seeks leave to serve document requests and deposition notices upon Plaintiff and third parties on a basis contemporaneous with Plaintiff.


November 2, 2010
New York, New York

WINSTON & STRAWN LLP


By:_____/s/_____
    Joseph DiBenedetto
    Michael Friedman
    200 Park Avenue
    New York, NY 10166
    (212) 294-6700

    *Attorneys for Defendants*


NY:1312462.2