**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
**Lions Gate Entertainment Corporation,**

                  **Plaintiff,**

         **-against-**

**Carl C. Icahn** *et al.*
                  **Defendants.**
-----------------------------------------------------------------X

**AMENDED OPINION & ORDER**

**10 CV 08169 (HB)**

**Hon. HAROLD BAER, JR., District Judge:[1]**

    Plaintiff Lions Gate Entertainment Corporation ("Lionsgate") originally brought five causes of action against Defendants. Plaintiff has conceded that Counts II and IV are moot; during oral argument on March 18, 2011, this Court granted Defendants' motion to dismiss as to Count V, and I write now simply to provide an endorsement on that score. I denied the motion as to Count III, and reserved decision on Count I. For the reasons that follow, Defendants' motion is GRANTED as it pertains to Count I and Count V.

    Under Count I, Lionsgate claims that Icahn failed to disclose his plans regarding a possible Lionsgate-MGM merger, and failed to disclose an agreement with entertainment industry financier Mark Cuban by which Icahn was to buy Cuban's 5.4% share in Lionsgate for special consideration. According to Lionsgate, Icahn's failure to disclose this information violated section 13(d) of the Securities Exchange Act of 1934 (the "'34 Act").[2]

    Icahn's motion to dismiss is premised on the theory that when he amended his Schedule 13D filing to attach the Complaint and Amended Complaint, he cured any previous disclosure deficiencies and Count I should be dismissed as moot. Courts in this District and elsewhere have held that in an action claiming a failure to disclose under the '34 Act, a defendant's filing an amendment to its Schedule 13D and attaching plaintiff's complaint is "sufficient to satisfy Williams Act requirements and moot any Williams Act claim." See *Taro Pharm. Indus., Ltd. v.*

---

[1] This Opinion and Order amends the Opinion and Order dated March 23, 2011 for the sole purpose of adding to the record the reasons that prompted my March 18, 2011 oral ruling that dismissed Count V of the Amended Complaint.

[2] Section 13(d) requires any person acquiring a beneficial ownership of more than 5% of a class of registered stock in a company to make certain filings and disclosures with the issuer of the security, the exchange where the security is traded, and the SEC.

1

*Sun Pharm Ltd.*, No. 09 Civ. 8262 (PGG), 2010 WL 2835548, at *10 (S.D.N.Y. July, 13 2010) (citing *Avnet, Inc. v. Scope Indus.*, 499 F. Supp. 1121 (S.D.N.Y. 1980)).

Lionsgate argues that *Horsehead Res. Dev. Co v. B.U.S. Envtl. Servs., Inc.*, 916 F. Supp. 305 (S.D.N.Y. 1996) stands for the proposition that, contrary to *Avnet* and *Taro*, filing a complaint is not enough to moot a section 13(d) claim. However, its reliance on *Horsehead* is misplaced. In that case, plaintiff brought an action alleging that defendant's 13D filing failed to disclose that defendant was under investigation for criminal violations of German environmental laws and regulations. In response, the defendant annexed the complaint to an amended 13D filing, thus disclosing the alleged environmental violations. *Id*. at 308. The court distinguished *Avnet* on the grounds that where information not disclosed involves a criminal investigation specifically related to the business of the company who allegedly failed to disclose, attaching the allegations in a civil complaint to an amended 13D filing is insufficient; the defendant was also required to disclose whether the criminal investigation was ongoing or conclusively ended without convictions. *Id.* at 313. *Horsehead* cited *Avnet* with approval and noted that generally "if [a] party in good faith disputes the violations, the party need only disclose the possibility of the violations." *Id.* at 312. The court further acknowledged that in *Avnet* and similar cases such disclosure was sufficient to moot any 13D claims. *Id*. Here, there is no allegation that Defendants are involved in an ongoing criminal investigation related to their dealings with Lionsgate, and they vigorously dispute any special dealings with Cuban or plans for an MGM merger.

Plaintiff next cites to a ruling, made from the bench, in which Judge Cote noted that the result compelled by *Avnet* could undermine the purpose of the 13D disclosure requirement. In a subsequent opinion, she declined without explanation to dismiss a claim as moot despite the fact that the defendant had filed the amended complaint wih the SEC. *See E.ON AG v. Acciona, S.A.*, 468 F. Supp. 2d 537, 555 (S.D.N.Y. 2006). Lionsgate provides no context for this ruling, nor any attempt to distinguish *Avnet* or cases such as *Taro* that were decided subsequent to *E.ON AG* and affirmed the *Avnet* rule.

Icahn also moves for dismissal of Count V. That count alleges that Icahn tortiously interfered with Lionsgate's prospective business relations with Studio A and Studio B by improperly threatening the studios with litigation. Specifically, Icahn issued a press release stating that "We will challenge any proposed transaction that we perceive to be abusive of

shareholder rights . . . . In addition, we will not hesitate to enforce our rights against any third party that attempts to tortiously interfere with our [tender] offer by entering into an inappropriate defensive transaction with Lions Gate." Am. Compl. ¶ 41.

Under New York law, a plaintiff claiming tortious interference must show that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003). The law "requires an allegation that plaintiff would have entered into an economic relationship but for the defendant's wrongful conduct." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 107 (2d Cir. 2009) (internal citations omitted). While threats of litigation can constitute improper means if wrongfully made, *see Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 797 F.2d 70, 75 (2d Cir. 1986), in this case Plaintiff points to no facts from which to draw an inference that Icahn acted "solely" out of malice or used improper means. *Carvel Corp.*, 350 F.3d at 17. The complaint contains only conclusory statements that Icahn "knew that the proposed transactions were not 'abusive of shareholder rights' [and could not] be the basis for a tortious interference suit." Am. Compl. ¶ 42. Likewise, the assertion that Studio A and Studio B "walked away from a deal with Lionsgate at that time," *id.*, is unsupported by facts and does not allege the "but for" causation required by *Premium Mortgage*. These "[t]hreadbare recitals of the elements . . . supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

For these reasons Defendants' motion to dismiss is GRANTED as to Counts I and V, which are hereby dismissed. Counts II and IV are dismissed as moot, and Plaintiff's claims under Count III may proceed. The Clerk of the Court is directed to close the motion and remove it from my docket.

**SO ORDERED**
March 30, 2011
New York, New York

_____
**Hon. Harold Baer, Jr.**
**U.S.D.J.**

3